## Commonwealth *v.* Outlen, Appellant.

Argued March 16, 1972. Before JONES, C. J., EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

196

*Carroll F. Purdy, Jr.,* for appellant.

*Marion E. MacIntyre,* Deputy District Attorney, with him *LeRoy S. Zimmerman,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE O'BRIEN, April 20, 1972:

Appellant was convicted by a jury of murder in the second degree. His post-trial motions for a new trial and in arrest of judgment were denied, and this appeal followed the imposition of sentence of a term of imprisonment of not less than seven nor more than fifteen years.

Viewing the evidence in the light most favorable to the Commonwealth, *Commonwealth v. Rankin,* 441 Pa. 401, 272 A. 2d 886 (1971), the facts of the homicide are as follows:

Appellant entered a bar in Harrisburg in the company of a female companion. At the time he was armed with a loaded pistol, but there is nothing to indicate that any specific mischief was intended involving the use of that weapon. As he entered the bar, the deceased, Ralph Palmer, spoke to appellant's female companion, whereupon appellant approached the deceased and indicated his displeasure. Appellant did not push or touch the victim at that time, but the victim nevertheless jumped up and shouted "Man, don't touch me any more." Thereafter, the argument between the two men intensified and they started to tussle. In the course of this altercation, the victim struck appellant on the head, above the eye, at least once with a barstool.

Other people present on the scene then separated the two men. The victim backed away from appellant and picked up another barstool. Appellant in turn backed away from the victim and pulled his loaded pistol from his back pocket. The two men faced each other for some ten to fifteen seconds. The two men were some twelve or thirteen feet apart, and the victim was near a door leading to the street, while appellant was about six feet from the same door, around which six or seven people had gathered. As the two men faced each other, some twelve or thirteen feet apart, neither approached the other nor made any move to do so.

Appellant aimed his pistol at the decedent and pulled the trigger, but the gun misfired. Appellant then recocked the pistol and pulled the trigger a second time, but again the gun misfired. Appellant once again cocked the weapon, pulled the trigger for a third time, and this time the gun fired. The bullet entered the decedent's abdomen, inflicting a fatal wound. In the ten to fifteen second interval during which the two men faced each other and appellant attempted three times, the third time successfully, to fire his pistol, neither man made any attempt to approach the other, although the victim was trying to pick up another barstool at the time that appellant pulled the trigger for the third time.

Appellant alleges that the trial court erred in refusing his request for binding instructions to the effect that the jury could not find a verdict of guilty of murder but of manslaughter at the most. Appellant also contends that the court should have granted his request to instruct the jury that if the decedent struck the appellant with a barstool, there was, as a matter of law, adequate legal provocation to reduce the killing from murder to voluntary manslaughter. We find no error in the refusal of these requests.

The trial court charged the jury fully on the elements of manslaughter and pointed out to the jury that an intentional killing could constitute voluntary manslaughter if it were accomplished in the heat of passion caused by a legally sufficient provocation. As part of that charge, the court instructed the jury as follows:

"The unlawful killing to be voluntary manslaughter must take place in the heat of passion before the blood has had time to cool off and that passion must be produced by a legally sufficient provocation. By passion we mean anger, fear, rage or terror.

"The highest Court of Pennsylvania, the Supreme Court, has said that in order for a killing to be reduced from murder to voluntary manslaughter, the evidence must establish that the killing was perpetrated in the heat of passion, yet that passion must be the result of provocation that would incite a reasonable man into such a frenzied condition. The provocation must be legally adequate."

The charge of the trial court on voluntary manslaughter was accurate and placed before the jury the elements of that crime as to which it would be required to make factual determinations. The very heart of appellant's attempts to reduce the crime to voluntary manslaughter is his contention that the homicide occurred as a result of provocation and insufficient time for the cooling of the blood. It was the jury's function to determine whether the altercation and its results were such as to provide legally adequate provocation, such as would lower the crime from murder to manslaughter. The jury had the duty of determining whether there was sufficient anger, fear, rage or terror in appellant's mind at the time of the killing to preclude a finding of murder; and even if such a condition of mind existed, whether sufficient time had elapsed for the blood to cool.

It was not the function of the trial court to inform the jury that the victim's striking of appellant with a barstool constituted legally adequate provocation as a matter of law. As the trial court said in its charge: "Our highest court has said further that no words, nor mere gestures, however false, foul or insulting will free a party killing from the guilt of murder nor will slight or trivial injuries, though they amount in law to an assault, nor in some cases even a blow. Insulting or scandalous words are not sufficient cause of provocation nor are actual indignities to the person of a light and trivial kind. You will keep that in mind as you consider the evidence in this case."

That direction to the jury was a correct statement of the law. It was for the jury to determine from the evidence in the case the seriousness of the assault on the appellant and whether the consequences of that assault were sufficiently severe to provide legally adequate provocation. As the trial court aptly stated in its opinion sur post-trial motions: ". . . [T]he jury could have found that the defendant . . . was not seriously injured when struck by the bar stool, and that, after the men had been separated by bystanders, his anger had an opportunity to cool, with the result that his subsequent actions in pulling the trigger of his pistol *three* times before the fatal bullet was discharged is evidence of malice and constitutes murder and not voluntary manslaughter." (Emphasis in original.) On this record the jury most certainly was justified in reaching such a conclusion.

Appellant further complains that the trial court erred in instructing the jury as to what action or actions of the deceased would not constitute legally adequate provocation, while failing to instruct the jury on what actions would constitute such provocation. That argument is based upon the portion of the charge of

the trial court last quoted. That paragraph of the charge is only a small portion of the overall charge, which was not given in a vacuum. The evidence in the case was before the jury and the charge, when viewed in its entirety, made clear to the jury what was at issue. The jury was properly instructed and had before it a determination of the critical question. The court had discussed the altercation between the parties at length and there can be no doubt that the jury was clearly aware of its function and duty.

Judgment of sentence affirmed.